NOT PRECEDENTIAL – NOT FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| RHEA DOWLING, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>HESS OIL VIRGIN ISLANDS )<br>CORPORATION, and AMERADA HESS, )<br>)<br>Defendants. )<br>_____) | CIVIL NO. 98-0127<br><br>ACTION FOR DAMAGES<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## MEMORANDUM OPINION

Finch, J.

THIS MATTER comes before the Court on the Motion for Summary Judgment filed by Defendant Hess Oil Virgin Islands Corporation [hereinafter "HOVIC"].[1]  Plaintiff Rhea Dowling opposes such motion.

**I.     Background**

HOVIC operated and maintained a refinery in St. Croix, United States Virgin Islands until October 28, 1998.  HOVIC engaged Anthony Crane International [hereinafter "Anthony Crane"] to provide construction equipment operation and maintenance services by virtue of Contract Number CSX-0444, dated August 1, 1996 [hereinafter "the Agreement"].  Anthony Crane hired Dowling on October 3, 1996 to work exclusively at the HOVIC refinery in St. Croix, Virgin Islands as a Safety Engineer.

Dowling has sued HOVIC for employment discrimination in violation of Title VII of the

---

[1] Although Defendant Amerada Hess joined in HOVIC's motion, Amerada Hess' motion will be addressed separately.

Civil Rights Act of 1964.  Dowling also claims that HOVIC's failure to act when Anthony Crane discriminated against her constitutes a breach of the Agreement by HOVIC.  Dowling argues that she has standing as a third-party beneficiary of the HOVIC/Anthony Crane contract to recover against HOVIC for such breach.  Finally, Dowling alleges the torts of intentional and negligent infliction of emotional distress.[2]

HOVIC asserts that it cannot be held liable under either Title VII because it was not Dowling's employer.  HOVIC also argue that Dowling cannot recover against it under a third-party beneficiary theory because it did not breach any term of the Agreement and because Dowling was an incidental, rather than an intended third-party beneficiary.  HOVIC also maintains that Dowling's evidence of intentional and negligent infliction of emotional distress is insufficient to survive summary judgment.

**II.     Facts**

"The standard for awarding summary judgment is well-worn: it is fitting when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56©. . . . In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Southeastern Penn. Transp. Auth., 479 F.3d 232, 237-38 (3d Cir. 2007).  Therefore, while acknowledging that there are two sides to any dispute, in presenting the factual background, the Court focuses on those facts, and inferences

---

[2] Dowling also appeals the EEOC's finding.  HOVIC contends that such an appeal does not lie with this Court.  In Dowling's 49-page opposition, Dowling does not respond to this contention.  The Court interprets Dowling's failure to address this issue as a concession.  Dowling similarly concedes her claim for discrimination under the Civil Rights Anti-Discrimination Statutes by neither citing to a statute that provides for a private cause of action nor by making any reference to this claim in her opposition.

drawn from those facts, that favor Dowling.

Although Anthony Crane selected Dowling for employment, Anthony Crane could not hire Dowling until HOVIC approved her application after she passed a series of tests that HOVIC required Anthony Crane to give her.  Pl. Ex. 16, Dowling Aff., ¶¶ 10,11; Agreement ¶ 2.8. Anthony Crane paid employees in Dowling's pay group at a pay rate established by its Agreement with HOVIC.  Agreement, ¶¶ 5.0, 6.8.  HOVIC gave Dowling a HOVIC Employee Handbook when she began employment.  Dowling Aff., ¶ 17.  HOVIC trained Dowling in her position, provided her with the equipment she needed to perform her job and directed her work. Id., ¶¶ 5, 8, 14, 15.   At times, HOVIC also assigned her work and required her to work certain hours.  Id., ¶¶ 7, 12.

The Agreement specifies that Anthony Crane "is an independent contractor and HOVIC does not retain any control over the manner in which the Services will be performed, being interested only in the results to be obtained."  Agreement, ¶ 23.0.  Anthony Crane set Dowling's holiday schedule, generally set her work schedule, paid her salary and benefits and withheld her taxes.  Bingham Aff., ¶10.   Anthony Crane also accepted Dowling's discrimination complaint.

During the course of her employment, Dowling's Anthony Crane supervisor and co-workers called her racially and gender-biased names, such as "Black bitch."  Anthony Crane did not give her access to a vehicle she needed to perform her job because she was female.  She was also not afforded essential training in forklift operation and safety that would have allowed her to be more effective in her position.  A male Anthony Crane employee would eavesdrop on her conversations with female employees.  When her Anthony Crane supervisor learned that she had complained to Anthony Crane management that she was being mistreated because she was black

3

and female, he yelled at her and her other co-workers escalated the derogatory, and racial remarks, with the goal of forcing her to resign.

Dowling informed security and human resources personnel at HOVIC of the intolerable working conditions and that the atmosphere had worsened when her Anthony Crane supervisor and co-workers learned that she had complained to Anthony Crane's management. Pl. Ex. 4, Dowling Statement to HOVIC Security dated Nov. 7, 1997; Pl. Ex. 7, Mem. from Dowling to Moorhead dated Oct. 28, 1997. HOVIC communicated Dowling's complaint among upper management. Pl. Ex. 8, Mem. from Moorhead to Colabella, dated Oct. 28, 1997. However, HOVIC left it upon Dowling to report back to HOVIC if Anthony Crane had not satisfactorily resolved the situation. Id.; Pl. Ex. 9, HOVIC Answers to Interrog. No. 15. Although Anthony Crane performed a perfunctory investigation and confirmed Dowling's report, neither Anthony Crane nor HOVIC took any remedial steps. Pl.'s Ex. 1, Appeal of Determination of Charge.

### III. Whether There is a Genuine Issue of Material Fact as to Whether HOVIC was Dowling's Employer So as to be Subject to Liability under Title VII.

Title VII provides that:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; . . .

42 U.S.C. § 2000e-2(a). The term "employer" under Title VII means, "a person," which broadly includes partnerships, associations, one or more corporations, and unincorporated organizations. 42 U.S.C. §§ 2000e(a), (b). An "employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f).

Following the reasoning of Butterbaugh v. Chertoff, 479 F. Supp.2d 485, 491-94 (W.D. Pa. 2007), the Court will apply what is referred to as the "joint employer" doctrine in determining whether an employee-employer relationship existed between Dowling and HOVIC for purposes of Title VII liability. See also Graves v, Lowery, 117 F.3d 723, 729 (3d Cir.1997) (applying joint employer doctrine in Title VII employment discrimination case). Thus, to survive summary judgment, Dowling must show that a reasonable jury could determine that HOVIC was her joint employer.

"[T]he question of 'joint employer status' is a factual one." N.L.R.B. v. Browning-Ferris Industries of Pennsylvania, Inc., 691 F.2d 1117, 1121 (3d Cir. 1982). "The Court's analysis of Defendant's relationship with Plaintiff[] will therefore focus on three factors: 1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; 2) day-to-day supervision of employees, including employee discipline; and 3) control of employee records, including payroll, insurance, taxes and the like." Butterbaugh, 479 F. Supp.2d at 494 (quotation omitted). In Graves v. Lowery, the Third Circuit held that employment status is determined by "look[ing] to the level of control that the organization asserts over the individual's access to employment and the organization's power to deny such access." Graves, 117 F.3d at 728 (citation omitted).

Although Anthony Crane selected Dowling, according to Dowling, Anthony Crane could not hire her until HOVIC approved her application. Anthony Crane was not free to compensate Dowling as it chose, but only at the contractual rate that it had negotiated with HOVIC. HOVIC gave Dowling HOVIC's employee handbook, trained her, and provided here with the tools she needed to do her job. HOVIC required Dowling to participate in particular safety investigations

5

and demanded that she work certain irregular hours to perform her work duties.

That Anthony Crane selected Dowling for employment, handled Dowling's payroll, insurance, and taxes, and controlled Dowling's personnel records is not so compelling as to require a jury to find that Anthony Crane was Dowling's sole employer. The evidence that HOVIC authorized Dowling's hiring, dictated her pay rate, provided her with training and equipment, and assigned her certain duties, is sufficient for a reasonable jury to find that HOVIC was Dowling's joint employer. Since HOVIC's only challenge to Dowling's Title VII claim is the absence of an employee-employer relationship and a reasonable jury could find that HOVIC had joint employer status, along with Anthony Crane, the Court denies summary judgment on Dowling's Title VII claim against HOVIC.

**IV.    Whether There is Sufficient Evidence for Dowling to Hold HOVIC Liable for Allegedly Breaching the Agreement.**

Paragraph 31.0 of the Agreement entitled "Non-Discrimination in Employment" expresses an intent by both HOVIC and Anthony Crane to prohibit discrimination. It reads, "CONTRACTOR will comply with the equal opportunity clause published in the regulations of the U.S. Department of Labor Implementing Executive Order 11246."[3] HOVIC has interpreted

---

[3] The equal opportunity clause published in the regulations of the U.S. Department of Labor implementing Executive Order 11246 provides in part:

> The contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to the following: Employment, upgrading, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to

this contractual language as barring Anthony Crane from engaging in unlawful discrimination on the performance of its obligations under the contract.  Pl. Ex. 9, HOVIC's Answer to Interrog. No. 5.  Failure of Anthony Crane to comply with the equal opportunity clause would constitute a breach of the agreement under paragraph 16.0 of the Agreement.  HOVIC "had authority to cancel or fail to renew its contract with Anthony Crane if it had been aware of any 'discriminatory behavior' on Anthony's part."  Ex. 9, HOVIC's Responses to Plaintiff's First Set of Interrogatories, No. 32.

Dowling's theory is, apparently, that HOVIC was obligated and required to enforce paragraph 31.0 of the Agreement when Anthony Crane allegedly breached it.  By failing to cancel or suspend the Agreement when it became aware of Anthony Crane's behavior, Dowling reasons, HOVIC itself breached a promise of the Agreement.  Dowling argues that she is an intended third-party beneficiary of that promise, affording her a cause of action against HOVIC. See Restatement (Second) of Contracts § 304 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.").

Yet, Dowling cannot point to any promise that HOVIC made to Anthony Crane in which it obligated itself to hold Anthony Crane to each and every term of the Agreement.  Indeed, paragraph 26.0 of the Agreement makes clear that HOVIC may waive any term of the Agreement.  Paragraph 26.0 provides:

> The failure for HOVIC at any time to request strict performance by

---

employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

41 C.F.R. § 60-1.4.

> CONTRACTOR of any provision of this Agreement will not affect the right of HOVIC thereafter to enforce the same. No waiver by HOVIC of any breach or violation of any of the terms of this Agreement will be deemed to be a waiver of any continuing or succeeding breach of any such term of this Agreement, or as a waiver of the term itself.

Thus, although the Agreement mandated that Anthony Crane comply with the equal opportunity clause, HOVIC had the right, *but not the obligation*, to enforce Anthony Crane's compliance. The Agreement does not impose a contractual duty upon HOVIC to take any action whatsoever upon Anthony Crane's breach of paragraph 31.0 of the Agreement or any other term.

Because HOVIC did not have a duty to enforce paragraph 31.0, even if Dowling were an intended beneficiary of paragraph 31.0, she would be unable to recover for HOVIC's failure to perform this nonexistent duty. See Restatement (Second) of Contracts § 309, cmt. a ("[T]he right of an intended beneficiary is created by contract, and in the absence of contract there is no such right"). More simply, because HOVIC was not contractually obligated to take any action in response to Anthony Crane discriminating against Dowling, Dowling does not have a contractual cause of action against HOVIC for failing to react.

V.   **Whether There is a Genuine Issue of Material Fact as to Whether HOVIC Intentionally Inflicted Dowling with Emotional Distress.**

A defendant cannot be held liable for intentionally causing emotional distress unless the defendant "by extreme and outrageous conduct causes severe emotional distress." Restatement (Second) of Torts § 46(1). "Liability has been found only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id., cmt. d.

Dowling claims that HOVIC did not take appropriate action to investigate her claims itself and did not ensure that Anthony Crane undertook a thorough investigation.  Dowling also complains that HOVIC did not use its contractual power over Anthony Crane to require Anthony Crane to take remedial action or suffer the consequence of cancellation of the Agreement.  Dowling admits that HOVIC took a statement from her about her concerns, discussed her complaint within its upper management, and encouraged her to inform HOVIC if Anthony Crane did not resolve the matter to her satisfaction.

No reasonable jury could find that HOVIC's conduct in handling Dowling's was outrageous in character.   HOVIC did not show complete and deliberate indifference to Dowling's complaint of race and gender harassment.  Even if HOVIC could have handled Dowling's concerns differently, the inadequacy of its response was not so extreme in degree as to go beyond all possible bounds of decency, and could not reasonable be regarded as atrocious or intolerable in a civilized community.

For HOVIC to be held liable for the reprehensible conduct of Dowling's Anthony Crane supervisor and co-workers, Dowling would have to show an employer-employee relationship between HOVIC and each of these individuals.  See Restatement (Second) of Agency § 219.  Although, as discussed previously, a reasonable jury could find that HOVIC was Dowling's joint employer, she did not present sufficient evidence for a reasonable jury to find that HOVIC was the joint employer of  those she accuses of directly and deliberately inflicting her with emotional distress.  Therefore, such tortious conduct cannot be imputed to HOVIC.  Dowling does not show that she was the brunt of any discriminatory conduct by the HOVIC employees who may have trained her or directed aspects of her work.

There is insufficient evidence from which a reasonable jury could find HOVIC liable for its own conduct or based on the actions of those who Dowling claims were harassing her.. Therefore, the Court grants summary judgment on Dowling's claim against HOVIC for intentional infliction of emotional distress.

**VI.    Whether There is a Genuine Issue of Material Fact as to Whether HOVIC Negligently Inflicted Dowling with Emotional Distress.**

Similarly, because Dowling had not shown an employer-employee relationship between HOVIC and her Anthony Crane supervisor and co-workers, HOVIC cannot be held liable for any infliction of emotional distress caused by their negligent conduct.  However, HOVIC can be held liable for its own conduct, if Dowling has shown that there is a genuine issue of material fact as to each of the elements of the tort of negligent infliction of emotional distress.

For the Court to find that the HOVIC negligently caused Dowling to suffer emotional distress, Dowling must show that (1) HOVIC unintentionally caused her emotional distress; (2) HOVIC  should have realized that its conduct involved an unreasonable risk of causing the distress; (3) HOVIC from known facts should have realized that the distress, if it were caused, might result in illness or bodily harm; and (4) Dowling experienced bodily harm. See Restatement (Second) of Torts §§ 313, 436A.

Dowling sought HOVIC's assistance in resolving her issues with her Anthony Crane supervisor and co-workers on more than one occasion.  A reasonable jury could determine that HOVIC was Dowling's joint employer.  Based on this relationship, HOVIC should have anticipated that Dowling would have expected HOVIC to take aggressive action.  HOVIC's failure to investigate and resolve her concerns or to assure her that it would require Anthony

Crane to do so, could be considered by the jury to have made Dowling feel that she had no further recourse but to persevere in the discriminatory atmosphere or resign from her position. The jury could believe that HOVIC should have realized that its failure to take meaningful steps would be viewed by Dowling as allowing the racial and gender discrimination to rampantly escalate. From the nature of the harassment described in Dowling's communications to HOVIC, HOVIC should have recognized that its failure to act might result in Dowling suffering emotional stress so severe as to manifest itself in bodily harm.

Dowling suffered loss of appetite, headaches, pain in her neck, indigestion, stomach trouble, problems sleeping, crying easily and nightmares as a result of the way that she was treated while working in the HOVIC refinery. Chester D. Copemann, PhD, specializing in clinical psychology, determined that Dowling was "experiencing significant psychological dysfunction, coupled with both overwhelming situational and occupational stress . . . secondary to her purported gender harassment and racial discrimination she suffered as an employee of Anthony Crane International." He diagnosed her with chronic adjustment disorder. From this evidence, a reasonable jury could find that Dowling suffered bodily harm.

Certainly, HOVIC's inaction was not the sole cause of Dowling's emotional distress. However, because Dowling has shown a genuine issue of material fact as to each of the elements of negligent infliction of emotional stress, HOVIC can be held liable as a joint tortfeasor.

## VII.   Conclusion

HOVIC may be held liable under Title VII because under these particular factual circumstances, a reasonable jury could find that HOVIC was Dowling's joint employer. No cause of action lies against HOVIC for breaching its Agreement with Anthony Crane by not

enforcing the equal opportunity clause of its Agreement with Anthony Crane when HOVIC learned of the discriminatory behavior against Dowling.  Because HOVIC was permitted, but not required, to take action, HOVIC did not breach any enforceable promise by its alleged failure to do more.  HOVIC's conduct was not so outrageous for a reasonable jury to find that HOVIC subjected Dowling to intentional infliction of emotional distress.  However, the evidence is sufficient for a jury to find that HOVIC negligently cause Dowling to suffer emotional distress.

The Court denies HOVIC's motion for summary judgment on Count II, alleging discrimination in violation of Title VII and Count V, alleging negligent infliction of emotional distress.  HOVIC's motion for summary judgment  is granted on all other counts.

ENTER:

DATE:      September 22, 2008            _____/s/_____
                                         Honorable Raymond L. Finch
                                         District Judge